Jody D Kimbrell, Pro Se
jody513@comcast.net
6608 N University St.
Peoria, IL  61614
309 691-6100  309 678-3857 cell

FILED #5

JUL 1 1 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JODY D KIMBRELL | ) |
| Plaintiff, | ) |
| v. | ) |
| TWITTER, INC. | ) |
| Defendant | ) |

CV 18 4144

Case No._____ PJH

JURY DEMANDED

COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

This is a complaint against the defendant for violation of Plaintiff's civil

rights as protected by the Constitution and laws of the United States. Plaintiff

Jody D Kimbrell hereby alleges and states as follows:

SUBJECT MATTER JURISDICTION

1.     This Court has jurisdiction because it arises under the laws of the United

States pursuant 28 U.S.C. § 1331 Federal Question; § 1332 Diversity

2.     And under 42 U.S.C. § 1983, 1985 and 1986 for violation of Plaintiff's

civil right protected by U.S. Constitution.

1. complaint

Intra-district Assignment

3.     This lawsuit should be assigned to the San Francisco Division of the Court because a substantial part of the events and actions occurred in San Francisco, CA. and defendant resides in the district.

4.     The Defendant is liable under 18 U.S. Code § 1028 - Fraud and related activity; California Unfair Competition Law Business and Professions Code section 17200, et seq.); Illinois Uniform Deceptive Trade Practices Act. (815 ILCS 510/1) (from Ch. 121 1/2, par. 311); 815 ILCS 505/1; 18 U.S. Code § 2520 - Recovery of civil damages Sect 1988 authorizes the use of common law remedies in § 1983 actions. 42 U.S.C. § 1988 (1976);

5.     This Court is authorized to award the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and Punitive Damages against the individual Defendant that is a Corporation sued in its official capacity and such injunctive, declaratory or other relief including reasonable expenses and fees as to compensate Plaintiff for all emotional harm, pain and suffering, loss of enjoyment of life and any other injuries inflicted by Defendant authorized by 42 USC § 1988.

2. complaint

## PARTIES

6.     Jody D Kimbrell is an individual who had an active Twitter account

@kandeekane13 that was targeted and suspended is a citizen of and resides

the State of Illinois.

7.     Twitter, Inc is a Delaware corporation with its principal place of

business at 1355 Market Street, San Francisco, CA 94103.  Twitter, Inc.

operates a global platform for self-expression and communication, with the

mission of giving everyone the power to create and share ideas and information

instantly.  Twitter's more than 300 million active monthly users use the

platform to connect with others, express ideas, and discover new information.

Hundreds of millions of short messages (known as "Tweets") are posted on

Twitter every day.

## FACTUAL BACKGROUND

8.     After Donald Trump's inauguration, persons critical of the president

and his administration began creating anonymous Twitter accounts claiming

to be Trump supporters to lure them in then file complaint of abuse to get

them suspended. The Defendant specifically targeted the Plaintiff when she

posted support on the @realDonaldTrump twitter account and that this

targeting of POTUS supporters has removed over 43,000 supporters from the

public platform targeted to silence them in violation of the First Amendment.

3. complaint

9.     Within seconds of a @RealDonaldTrump tweet, hoards of the same group of "verified" twitter trolls fill up the top commentator spots with their snarky negative replies. These trolls lie in wait for a @realDonaldTump supporter to tweet the President with support. They send a tweet to the target. Their profile page is filled with support for the President so the unsuspecting @realDonaldTrump supporter responds, in plaintiff's case with answers to their tweeted question.

10.   Plaintiff replied with <u>history of progressive talking points and where they originated</u>; and included memes to prove the claim as taken from an original published pamphlet. Plaintiff's history library starts in 1580 and is all original published books and pamphlets. The following is the meme pictures of the pamphlet.



11.    All "progressive" forces. Democrats call themselves Progressives

4. complaint



12.    "Make the rich pay" another Progressive Democrat talking point.



13.    Original published in 1938 Political Pamphlet. I have sent this

information to dozens of @realDonaldTrump supporters.

14.    Then the targeted attack came. The trolls tweet the old remark from the

Brock troll book, "what are you stupid, what is this word salad of ignorance"

and a few others that I refrain from adding to a Court document but does

mention one's mother. Court can view Plaintiff's responded tweets on a political

platform. The only identification presented was three anonymous accounts

whose profile page shows them to be @realDonaldTrump supporters; when in

fact they are Defendant's trolls targeting to silence opposition they hate.

**Twitter** <notify@twitter.com>

6/5/2018 7:04 AM
**To**  jody kimbrell



Hello jody kimbrell,

Your account, kandeekane13 has been suspended for
violating the Twitter Rules.

Specifically, for:

**Violating our rules against abusive behavior.**
You may not engage in the targeted harassment of
someone, or incite other people to do so. We consider
abusive behavior an attempt to harass, intimidate, or
silence someone else's voice.


**jody kimbrell**
@kandeekane13

@casekaem Oh Brocks troll book chapter 5. You loons
really need to get new troll talking points. HEY Brock your
F**King trolls are getting stupider by the tweet. No wonder
HRC lost you are a damn idiot https://[...]

 **jody kimbrell**
@kandeekane13

@skeller85 @casekaem @JOHNFKN5
@realDonaldTrump Her ass and well I'll be damn two
crybaby losers. Just think you idiots have 36 yrs plus of
Trump he has lots of grandkids face it progressive
commies it is over for the jackass you killed off 57.5M
liberals the ass is https://[...]

Note that if you attempt to evade a permanent suspension
by creating new accounts, we will suspend your new
accounts. If you wish to appeal this suspension, please
contact our support team.

### Defendant's Own Definition of Abusive Behavior

15.    "We believe in freedom of expression and open dialogue, but that means little as an underlying philosophy <u>if voices are</u> <u>silenced because people are afraid to speak</u> up in order to ensure that people feel safe expressing diverse opinions and beliefs, we prohibit behavior that crosses the line into abuse, including behavior that harasses, intimidates, or uses fear to silence another user's voice. Context matters when evaluating for abusive behavior and determining appropriate enforcement actions. Factors we may take into consideration include, but are not limited to whether:

- the behavior is targeted at an individual or group of people;
- the <u>report has been filed by the target of the abuse</u> or a bystander;
- the behavior is newsworthy and in the legitimate public interest.

7. complaint

16.    Plaintiff complains that abuse in the eyes of Defendant's employees is disagreeing with them and by using paid Twitter trolls in their company to troll the @realDonaldTrump Twitter account with ultimate goal to suspend every POTUS supporter by targeting their accounts. This was the reason they suspended Plaintiff's account over two tweets they claim abused three persons identified as @caskaem, @skeller85 and JOHNFKN5.

17.    The @casekaem tweeted to Plaintiff for information who responded with the information as to history. Then two others @skeller85 and JOHNFKN5 responded to Plaintiff's notifications with abuse which; Plaintiff responded with the two tweets and three meme pictures: Plaintiff did not know their actions was to specifically target @realDonaldTrump supporters by trolling his Twitter account then harassing any supporter who tweeted on his account so they could file complaint and the defendant suspends Plaintiff's account. The following three memes were attached to Plaintiff's response tweets:



Much of the weekend served as a real-time brochure for David Brock's organizations. | AP Photo

**Brock groups set $40 million budget to fight Trump**

By GABRIEL DEBENEDETTI | 01/21/2017 05:06 PM EST

AVENTURA, Fla. — The constellation of political groups in Democratic strategist David Brock's network are aiming to raise roughly $40 million in 2017, the Clinton antagonist-turned-top ally told roughly 120 donors gathered here on Saturday.

8. complaint

18.    A statistic cartoon of the total amount of abortions that have been done in the United States. Conservatives do not abort their children and progressive democrat liberals demand it making 57.5M less liberals in America by their own hand. If they continue this population cleansing liberals will cease to exist. This observation is plaintiff's opinion why democrats lost in the 2016 election. Available voters did not exist.



And a cartoon donkey if the practice continues:



19.    Plaintiff then blocked all three trolls as required by Twitter rules if someone is harassing you. Plaintiff cannot access her blocked Twitter account.

20.     Three days later while plaintiff was tweeting with another account the

Defendant sent Plaintiff notice her account was suspended for abuse remitting

her two tweets they claim violated Twitter rules against abusive behavior. They

included the threat to not open another account or they would track plaintiff

down and suspend it too. There was a button to submit an appeal which was

done.

**Twitter Support**<support@twitter.com>
6/5/2018 7:23 AM
**To**  jody513@comcast.net

Hello,

We received your appeal regarding your account. We will review the information you
provided and respond as soon as possible.

Thank you,

Twitter Support

21.     Plaintiff would have deleted the tweets if they had hurt someone's

feelings and did appeal but never received any response except automated

emails saying Twitter was reviewing the appeal claiming they received

information.  Defendant did NOT request any information.

22.     Then June 13, 2018 the Defendant silenced Plaintiff's voice in violation of

the First Amendment.

10. complaint

Case# 85113172: Appealing an account suspension - @kandeekane13 [ ref:_00DA0K0A8._5004A1PmQKQ:ref ]

support@twitter.com

6/13/2018 2:50 PM

**To**  jody513@comcast.net

Hello,

**Your account has been suspended and will not be restored because it was found to be violating the Twitter Terms of Service, specifically the Twitter Rules against participating in targeted abuse.**

**In order to ensure that people feel safe expressing diverse opinions and beliefs on our platform, we do not tolerate abusive behavior. This includes behavior that harasses, intimidates, or uses fear to silence someone else's voice.**

**You can learn more about our rules against abusive behavior here:https://twitter.com/rules#abusive-behavior.**

**Thanks,**

**Twitter**

23.    The tweets were a response. As the Court can see the tweets did not

target any group and only responded to harassment to three twitter accounts

which did not identify if they were persons belonging to a group or how they

were harmed.

11. complaint

24.    It appears Twitter allows employee trolls to specifically target

@realDonaldTrump supporters then in cooperation suspends the supporter to

block receiving any tweets from the President or voicing ones support.

Defendant uses their own rules to suppress free expression calling opposing

voices to their ideology abusive behavior.

THE "WE WILL NOT ALLOW TROLLS AT TWITTER" CLAIM IS MOOT

25.    Those who speak as troll accounts do so in deception so they can harass

without being identified and often going to considerable lengths to accomplish

their successfully getting Trump supporters accounts suspended.

26.    After complaints from Twitter users on all sides of the globe and political

spectrum, the social media site "claims" it is instating new rules that are meant

"to transform the site from a neo-Nazi troll-filled cesspool into a kiddie wading

pool where everyone is invited to jump in and play."

http://fortune.com/2016/12/07/trump-twitter-ceo-dorsey-tweet-feel/  Note

POTUS supporters are called Nazis every day by the losing side so by the

defendant's pledge to reform they identified who was to be targeted to silence.

27.    The company hopes the new rules will reduce "hateful conduct and

abusive behavior." The effort is an expansion of the hateful conduct rules that

Twitter already had in place, but targets the nuanced way that trolls have been

using the site to harass and abuse other users. The perfect attempted

12. complaint

argument to cover up where the trolls reside doing their targeted trolling.

28.    Twitter wants users to brace themselves for a bumpy ride, noting in a blog post, that "in our efforts to be more aggressive here, we may make some mistakes."

29.    Keep that in mind if Twitter suspends your account for <u>defending yourself against a troll it will correct its mistake</u> if it does suspend your account, Twitter claims it is working on a "robust appeals process" to get the innocent back and tweeting as quickly as possible.

30.    Note this is a condescending claim as POTUS supporter suspended accounts have no access except by email WHICH goes to an automatic reply. Plaintiff never received any contact or requests for information.

31.    Since the trolls work within Twitter it is their total discretion to restore the account which they have suspended some 43,000 @realDonaldTrump supporters.

32.    The Defendant had misled the public by saying its platform was open to everyone, then allegedly banning people based on their political viewpoints. Twitter describes itself as the "free speech wing of the free speech party," this defined "as long as you agree politically with them. We don't like @realDonaldTrump the best way of silencing him is to silence his supporters.

13. complaint

33.    It seems apparent Twitter is ruling that @realDonaldTrump supporters are a hate group by their conclusion they reached on plaintiff's <u>two tweets</u>.

34.    Defendant's employees have been in total shock @realDonaldTrump won and they helped him to do it. From an interview: <u>in an interview with *The New York Times*</u>, investor Peter Thiel mocked Twitter employees for what he described as their unwitting contribution to Trump's victory. "I think the crazy thing is, at a place like Twitter, they were all working for Trump this whole year even though they thought were working for Sanders", and Hillary Clinton.

35.    That tension puts Defendant's employees in an awkward position: their efforts have bolstered a politician that some of them find odious, and believe his use of the platform carries a real risk of harm. <u>Marina@m7z.</u> writes:

36.    "Inside Twitter's headquarters in San Francisco, the run-up to the US presidential election played out much as it did elsewhere. Most employees went about their business assuming Hillary Clinton would win, and Donald Trump would be relegated to a historical footnote. His antics on the platform, where he regularly barrages opponents with insults, were viewed with amusement.

37.    "The political climate then was still pretty giddy about Trump and how he's a total joke," said one employee who quit late last spring.

14. complaint

38.    But Trump's surprise win prompted soul-searching for many of the Defendant's 3,800 employees. "Fast-forward to the day after election," a former employee said. "I could feel it in my timeline — there was a strong sense of 'what have we done' from Twitter employees" by <u>allowing Trump supporters to use the Twitter</u> venue to get him elected as POTUS. The Defendant's employees mindset of "this is best for the country justification to violate the First Amendment is the same as a Text of an FBI agent who opposed @realDonaldTrump winning. "He can't win? Right? Right? " answer "NO I won't allow it." Defendant's employees must rectify what they allowed.

39.    Defendant's employees have decided to conquer a person they hate because he won over their chosen candidate will violate the First Amendment and why they use fake accounts and untraceable names to target and silence supporters of @realDonaldTrump.

40.    They tell themselves they are doing a good because @realDonaldTrump must be silenced so suspend his supporter's voice accounts using Twitter rules and twitter trolls.

41.    So Defendant's claim <u>they allow all voices and show no bias</u> as they advertise is fraud. Every @realDonaldTrump supporter suspended Defendant violates the First Amendment and Federal and State law where Twitter Corp Office is located and advertising as a public forum open expression.

15. complaint

42.    The UCL "borrows heavily from section 5 of the Federal Trade

Commission Act" but has developed its own body of case law for misleading

advertising. In *Davidson v. KimberlyClark Corp.*873 F.3d 1103 (9th Cir. 2017).

43.    Plaintiff's State has its own unfair competition law to prohibit false and

misleading advertising. Uniform Deceptive Trade Practices Act. (815 ILCS

510/1) (from Ch. 121 1/2, par. 311); Illinois Consumer Fraud and Deceptive

Business Practices Act ("Act"), 815 ILCS 505/1;  *Duran v. Leslie Oldsmobile,*

*Inc.,* 229 Ill. App. 3d 1032 (1992). See also *Priebe v. Autobarn,* Ltd., 240 F.3d

584 (7th Cir. 2001) where plaintiff resides subjected to Defendant's deception

44.    Defendant clearly displays their de-meaning hate rhetoric and admits

freely of their violation of free speech;

45.    From the Verge website: By Adi Robertson@thedextriarchy  Jun 15, 2018

"A California Federal Judge allowed Jared Taylor, founder of white nationalist

publication *American Renaissance,* can proceed with a lawsuit against

Twitter. Taylor sued Twitter in February, alleging that the company had

violated civil rights and contract law by banning two of his accounts."

46.    "Yesterday, California judge Harold Kahn narrowed the suit's potential

scope, but he said that Twitter hadn't made a strong enough argument for

throwing it out altogether. Kahn was also sympathetic to Taylor's claim that

16. complaint

Twitter had <u>misled the public by saying its platform was open to everyone, then allegedly banning people based on their political viewpoints</u>. The Judge called the Taylor Case a "Classic Public Interest Lawsuit"

47.    Then the site posted: By <u>Adi Robertson@thedextriarchy</u> Jun 15, 2018 5:40PM ET: Updated the story with response from defendant Twitter, Inc; "So despite Taylor's hyperbolic claim that this is "the first time censorship by a social media platform ... has been found actionable under state or federal law," nobody has come close to ruling that Twitter should be legally treated like a public service where everyone is guaranteed an account. (It doesn't have to be a "neutral platform," either.) It can still ban all the Nazis — or De-Nazified white nationalists — it wants."

48.    It is ironic that Twitter referred to the plaintiff in the lawsuit as a "de-Nazified white nationalist" which if Twitter knew history, the Nazis sent out brown shirts to shut down <u>free speech</u> of their opponents which allowed them to seize power.

49.    Today, the Defendant apparently uses the same tactics as the Nazi Brown Shirts only they are called Twitter trolls. They lie in wait and are sent out to shut down free speech of @realDonaldTrump supporters in hopes it will allow the people they wanted to run the country and lost to @realDonaldTrump to seize power once again.

17. complaint

50.    The Defendant is in full knowledge and cooperation what their employees are doing against @realDonaldTrump and his supporters. Their actions put the Defendant in violation of  18 U.S. Code § 1028 - Fraud and related activity in connection with identification documents, authentication features, and information. Their goal is to aid @realDonaldTrump opposition by any means because the Defendant's heart-broken employees allowed him to win using the Twitter, Inc public platform and in a deranged mindset, must make up for allowing defendants "public setting" to help @realDonaldTrump win the presidential election.

51.    These actions are in direct violation of the 1st Amendment of the United States Constitution and other Federal and State Laws.

## COUNT I

 (U.S. Const. amend. I  by 42 U.S.C. § 1983, 1985 and 1986 for violation of Plaintiff's civil right protected by U.S. Constitution.; Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; 18 U.S. Code § 2520 - Recovery of civil damages Sect 1988 authorizes the use of common law remedies in § 1983 actions. 42 U.S.C. § 1988 (1976)

52.    Plaintiff herein incorporates by reference paragraphs 1-51 as if set forth fully herein.

53.    Defendant Twitter, Inc. provides a platform for speech for hundreds of millions of users.  Its users Tweet about a broad range of topics, from a favorite

sports team to the birth of a child to the latest executive order.  Many of
Twitter's users choose to express themselves on the platform pseudonymously.
This allows Twitter Trolls to hide without fear of being recognized.

54.    These deceptive practices allow the targeting by trolls who then complain
and the Defendant cooperates and suspends the twitter accounts they do not
agree with politically from a public forum. *Knight First Amendment Institute of
Columbia University vs. Donald J. Trump, al.* , 17 Civ.5205 (NRB)   If you direct
your Tweet to the President of the United States, then Twitter cannot censor or
block you or cancel your account. The trolls targeted the Plaintiff when she
tweeted support to @realDonaldTrump account then tweeting to the plaintiff.

55.    "If Twitter takes any action on your tweet that constitutes First
Amendment censorship, Twitter can be subject to liability". As noted by Judge
Reice Buchwald, "Twitter is a private corporation. However, the interactive 280
word space created by Twitter is a public forum under the conditions specified
in the court's opinion. If you are using that space to communicate a matter of
public policy to an elected official, then Twitter is obligated to protect your First
Amendment right to free expression." Many conservatives on Twitter have been
complaining about censorship by Twitter. Within the parameters of the court's
opinion any such actions by Twitter can now lead to serious legal
consequences for suppression of free speech. (cited from the Opinion)

19. complaint

56.    Plaintiff's First Count alleges that Twitter employees participate in compelled targeting of individual Trump supporters Twitter accounts by using paid trolls inside Defendant's venue in cooperation with outside parties who oppose the speech of the Plaintiff. These actions chill the exercise of the constitutionally protected right to speak and is in direct opposition of Defendant's advertised claim of open and free platform of speech.

57.    Moreover, Defendant's further actions in providing a platform to silence opposing voice for profit and appeasement, a decision to permit its platform to be used fully violates Plaintiff's First Amendment guarantee. See, e.g., *Marcus v. Search Warrants*, 367 U.S. 717, 731-732 (1961); cf., e.g., *Arkansas Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 674 (1998).

58.    When rights of free speech—are at Stake--the Court must Act.

59.    For the foregoing reasons, the Court must order the defendant to immediately un- suspend Plaintiffs Twitter account @kandeekane13 and restore to its full capacity as it was June 13, 2018.  Such relief is warranted under the First Amendment of the United States Constitution.

COUNT II

U.S. Const. First Amendment; Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; 18 U.S. Code § 1028 - Fraud and related activity; Illinois 815 ILCS 505/1815;  ILCS 510/1) (from Ch. 121 1/2, par. 311 Deceptive Practice; UCL18 U.S. Code § 2520 - Recovery of civil damages authorized18 U.S. Code § 2520 - Sect 1988 authorizes the use of common law remedies in § 1983 actions. 42 U.S.C. § 1988 (1976)

60.    Plaintiff herein incorporates by reference paragraphs 1-60 as if set forth fully herein.

61.    The defendant has engaged in targeting specific users of their public domain namely @realDonaldTrump supporters to deny their freedom speech in appeared cooperation by suspending 43,000 supporters twitter accounts.

62.    These First Amendment interests are at their zenith when, as here, the speech at issue touches on matters of public political life.  Political expression "occupies the core of the protection afforded by the First Amendment" and must be afforded the highest level of First Amendment protection.  *McIntyre*, 514 U.S. at 346; see also *Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("There is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (a case should be considered "against the background of a profound national commitment to the principle that debate on

public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks.)

63.    The decision to speak is protected by the First Amendment.  As the Supreme Court has explained, "an author's decision likes other decisions concerning omissions or additions to the content of a publication is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995).

64.    It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society." Id. at 357 or in this case the shocked losers of a presidential campaign.

65.    A time-honored tradition of free speech on matters of public moment runs deep in the political life of America.  "Undoubtedly the most famous pieces of American political advocacy are The Federalist Papers, penned by James Madison, Alexander Hamilton, and John Jay is cited in   In re *Anonymous Online Speakers,* 661 F.3d 1168, 1172-73 (9th Cir. 2011) (citing McIntyre, 514 U.S. at 344 n.6). 71.

66.    Another is The Porcupine Works by William Corbett 1801 published in opposition to the English government meddling in a young America's politics-- the FOX News of the early 1800s.

67.    All in America have freedom of speech. It is when the defendant targets to dispose of speakers they disagree with using anonymous trolls is when they violate the very Amendment they claim their very existence is based on.

68.    In Plaintiff's case, there is reason for concern that defendant Twitter, Inc itself may reflect the very sort of retaliation to appease and cooperation in the ostracism from other parties who agree to silence any Trump supporters in hopes of disposing of his support, (cited response) of a Twitter employee "there can be no doubt bots(trolls) could target and get Trump supporters suspended and restrict their freedom to distribute information;

69.    "And thereby denying Trump supporters freedom of expression by targeted suspension in hopes to harm Trump." A misguided policy that violates the First Amendment bigly; *Talley v. California*, 362 U.S. 60, 64-65 (1960); see also (WIN) *Washington Initiatives Now v. Rippie*, 213 F.3d 1132, 1139 (9th Cir. 2000) ("Depriving individuals is ... 'a broad intrusion, discouraging truthful, accurate speech by those unwilling to and applying regardless of the character or strength of an individual's interest.'") (quoting *American Constitutional Law v Meyer*, 120 F.3d 1092, 1103 (10th Cir. 1997)

70.    These protections for political speech are as robust on the Internet as any other mode of speech.  The Supreme Court has unequivocally held that speech on the Internet is entitled to the highest form of First Amendment protection.  See *Reno v. ACLU*, 521 U.S. 844, 870 (1997).  As the Supreme

23. complaint

Court aptly recognized, "through the Internet and interactive services such as Twitter, Inc any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Id.; see also *In re Anonymous Online Speakers*, 661 F.3d at 1173 ("the Internet is the latest platform for online speech and stands on the same footing as other speech.").

71.     "As with other forms of expression, the ability to speak on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation ... [or] concern about social ostracism.'" In re *Anonymous Online Speakers*, 661 F.3d at 1173 (quoting McIntyre, 514 U.S. at 341-342).

72.     The courts have drawn upon the common law of damages to fashion remedies' for deprivations of constitutional rights. Section 1983 merely states that the defendant "shall be liable to the party injured in an action at law." 42 U.S.C. § 1983 (1976).  Section 1988 explicitly authorizes the use of common law remedies in § 1983 actions. 42 U.S.C. § 1988 (1976), reproduced in relevant part at note 135 infra. *Carey* v. *Piphus* 435 U.S. 247 (1978) is the first Supreme Court decision to articulate federal rules to govern the recovery of damages under § 1983.

73.     The determination as a matter of federal law of the amount of nominal damages recoverable, 435 U.S. at 267, marks a departure from lower court decisions that have applied state law on this question, see, e.g., *United States*

*exrel. Tyrell v. Speaker,* 535 F.2d 828, 830 n.13 (3d Cir. 1976). The aspect of
Carey was welcomed by judges and commentators who have advocated a
uniform law of damages in constitutional tort actions. *Basista v. Weir,* 340
F.2d74, 86 (3d Cir. 1965); *Bristow,* § 1983: An Analysis and Suggested
Approach, 29 ARK. L. RE. 255, 301 (1975); *Nahmod,* supra note 10, at 9;
Comment, supra note 10, at 1024-25.

74.     The decision will facilitate the development of a consistent body of
remedial law for all constitutional tort actions, since the rules developed under
§ 1983 will usually be applied. See, e.g., *Paton v. LaPrade,* 524 F.2d 862 (3d
Cir. 1975) in which court looks to § 1983 actions for guidance on damages).

75.     Defendant's employees used a public platform to rid it of
@realDonaldTrump supporters from the public platform in violation of the First
Amendment freely admitted in the public forum;
https://www.fastcompany.com/40549979/when-jack-dorseys-fight-against-
twitter-trolls-got-personal. Conveniently used to rid @real Donald Trump
supporters.

76.     And by Court declaration the defendant provides a "public" platform for
speech for hundreds of millions of users.  Defendant advertises they are a free
and open platform. Plaintiff alleges her Twitter account was suspended after
she tweeted her support of @realDonaldTrump and was targeted by trolls at
defendant's own venue who violates defendant's rules because they do not like

25. complaint

@realDonaldTrump had won over their choice. They had to do something about his winning but banning @realDonaldTrump was not an option. The conflict is felt at the highest levels of the company — last month, in a conversation with *Recode*, Defendant's <u>CEO Jack Dorsey thoughts on the subject</u> https://www.recode.net/2016/12/6/13864810/jack-dorsey-donald-trump-twitter

77.    "President-elect Donald Trump loves Twitter, as anyone might surmise from the billionaire's frequent fleet-fingered microfits. But how does Twitter feel about @realDonaldTrump? "

78.    That was the question posed to Jack Dorsey, Twitter cofounder and CEO, at the Recode Code Commerce conference in San Francisco, Calif on Tuesday evening. "Uh," Dorsey grinned, conceding to answer the query after several failed attempts at dodging. "Complicated," he replied. http://fortune.com/2016/12/07/trump-twitter-ceo-dorsey-tweet-feel/

79.    A Twitter spokesman noted that Twitter's rules "apply to all accounts." Still, one former employee who has participated in discussions about the company's abuse policies said "that a ban of @realDonaldTrump would be unimaginable." "It's not going to happen," the former employee said. "You just can't do it. @realDonaldTrump holds the most powerful office in the world. Would you rather not know what Trump was thinking at any given point? Knowledge is usually better than lack of knowledge."

26. complaint

80.    So suspending his support base in targeted troll attacks in violation of the First Amendment Federal and State law seemed the perfect answer to their dilemma.

81.    It wasn't until July 2016, well into the U.S. presidential election, that Defendant's CEO Dorsey's views started to change to remove "alt-right" figures that supported @realDonaldTrump. Alt-right included anyone who supports the President.

82.    First Amendment interests are at their zenith when, as here, the speech at issue touches on matters of public political life. Plaintiff used cartoon memes which one only has to view Defendant's platform of the Left's tweets towards @realDonaldTrump and his supporters to see caustic language.

83.    Compensatory damages are awarded for the harm caused by the Defendant's violation of the plaintiff's legal rights' guaranteed under the First Amendment of the United States Constitution.  Such damages may be special or general. Special damages are awarded for past, pecuniary losses arising out of circumstances peculiar to the plaintiff's case denial of freedom of speech.

84.    For the foregoing reasons, the Court should order the Defendant to pay the Plaintiff damages for cooperating in and participating in admitted hate of @realDonaldTrump supporters. Such relief is warranted under the First

27. complaint

Amendment of the United States Constitution and punishes the Defendant to refrain from any further targeting of @realDonaldTrump supporters.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:  a. Declare that  defendant Twitter, Inc by their employees masking themselves and trolling plaintiff to get a response so they could suspend her Twitter account is unlawful by Federal and State law;

b. Declare defendant's action suspending plaintiff's Twitter account violates the First Amendment rights of the Plaintiff one of the thousands of @realDonaldTrump supporters that has been suspended from the public platform using deceptive practice known as trolling to suspend Twitter accounts that disagree with Defendant's political views.

c. Issue an order that demands immediate reinstatement of plaintiff's Twitter account known as @kandeekane13 Jody D Kimbrell.

d. Order Defendant to pay Plaintiff damages in the amount of $1,000,000.00 to compensate Plaintiff for all emotional harm, pain and suffering, loss of enjoyment of life and any other injuries inflicted by Defendant for using a targeted attack on her free speech that supports @realDonaldTrump and;

28. complaint

By Court discretion award Punitive damages against the Defendant a

Corporation sued in its official capacity such injunctive, declaratory or other

relief to deter further Defendant misconduct in violation of Federal and State

Law.

e. Award Plaintiff its costs and reasonable cost including reasonable expenses

and fees as authorized by 42 USC § 1988;

f. Demand for Jury

g. Grant such other relief as this Court may deem just and proper.

Dated:  July 7, 2018

Respectfully submitted,

Jody D Kimbrell, Pro Se        jody513@comcast.net
6608 N University St.

Peoria, IL   61614
309 691-6100          309 678-3857 cell

29. complaint

**CERTIFICATE OF SERVICE**

 I  Jody D Kimbrell, certify that Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure the undersigned certifies that the statements set forth in this instrument are true and correct and that on July 7, 2018 three original copies was remitted by FedEx to this Honorable Court of:

**COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS**

Federal District Court  Northern Division
Clerks Office
450 Golden Gate Ave 16th Floor
San Francisco, CA 94102

Jody D Kimbrell        jody513@comcast.net
Kimbrell Realty
6608 N University St
Peoria, IL 61614   (309) 691-6100

30